UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LEE BROTHER, LLC,

        Plaintiff,

vs.

CROWLEY LINER SERVICES, INC.,

        Defendant.
_____/

Civil Action No.
1:06-CV-700

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING THE MOTION OF DEFENDANT CROWLEY LINER SERVICES, INC. FOR SUMMARY JUDGMENT

This matter is presently before the court on the motion of defendant Crowley Liner Services, Inc. ("Crowley") for summary judgment [docket entry 39]. Plaintiff has filed a response in opposition, and defendant has filed a reply. As the court does not believe oral argument is necessary, it shall decide this motion on the briefs.

Plaintiff Lee Brothers, LLC, alleges that it owned business property that was damaged or destroyed by Hurricane Katrina in August 2005. Plaintiff's property was located close to the Gulf Coast on Broad Avenue near W. Beach Boulevard in Gulfport, Mississippi. In their amended complaint, plaintiff asserts claims against its property insurer and insurance agent for breach of contract, bad faith, negligence and misrepresentation. The claims against those parties are being litigated in state court and have no bearing on the instant motion. In addition, plaintiff asserts a negligence claim against defendant Crowley based on the following allegations:

> 9. [During Hurricane Katrina] [a] shipping container owned and controlled by Defendant Crowley damaged the Plaintiff's property along with wind, storm surge and other debris.

\* \* \*

> 22. At all relevant times, Defendant Crowley had a duty to ensure its storage containers would not enter and cause damage to the Plaintiff's property.
>
> 23. Defendant Crowley breached this duty by failing to timely remove or secure its storage containers before Hurricane Katrina made landfall.
>
> 24. Storage containers owned by Defendant Crowley did in fact enter onto the Plaintiffs' [sic] property and caused damage to the Plaintiffs' [sic] property.

Crowley, which has cargo operations at the Port of Gulfport, denies that it was negligent or that its port property caused damage to plaintiff's buildings.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The court must view the evidence in the light most favorable to the opposing party and grant the motion only if the evidence is so one-sided that a reasonable fact-finder could not find for the non-moving party. *See Anderson*, 477 U.S. at 248-50; *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005); *Callender v. Ergon, Inc.*, 928 F. Supp. 665 (S.D. Miss. 1996).

As plaintiff's only claim against Crowley sounds in negligence, it is instructive to

review the elements of, and some of the burdens of proof applicable to, this tort. The Mississippi Supreme Court recently stated:

> In analyzing an actor's alleged negligence, this Court asks whether a duty exists and whether it has been breached. That is a question of law. But, "[t]he important component of the existence of the duty is that the injury is 'reasonably foreseeable,'" and thus it is appropriate for the trial judge to decide. . . .
>
> This Court in discussing the issues of duty and foreseeability has stated:
>
>> To succeed on a claim for negligence, the plaintiff must prove duty, breach, causation and injury. The plaintiff must show "(1) the existence of a duty 'to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury,' (2) a breach of that duty, (3) causal relationship between the breach and alleged injury, and (4) injury or damages." Duty and breach of duty are essential to finding negligence and must be demonstrated first.
>>
>> While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury. . . . This Court has held that the existence vel non of a duty of care is a question of law to be decided by the Court.
>
> The Court of Appeals considered the issue of foreseeability in *Hankins Lumber Co. v. Moore*, 774 So.2d 459, 464 (Miss.Ct.App. 2000). In *Hankins*, the Court of Appeals stated:
>
>> When reasonable minds might differ on the matter, questions of proximate cause and of negligence and of contributory negligence are generally for determination of jury [sic]. . . . Foreseeability and breach of duty are also issues to be decided by the finder of fact once sufficient evidence is presented in a negligence case.

\* \* \*

3

> Under Mississippi law, for a person to be liable for another person's injury, the cause of an injury must be of such a character and done in such a situation that the actor should have reasonably anticipated some injury as a probable result. The actor is not bound to a precision of anticipation which would include an unusual and improbable or extraordinary occurrence, although such happening is within the range of possibilities.

*Rein v. Benchmark Constr. Co.*, 865 So.2d 1134, 1143-44 (Miss. 2004) (most citations omitted). *See also Illinois Cent. R.R. Co. v. Bloodworth*, 145 So. 333, 336 (1933) ("Precaution is a duty only so far as there is reason for apprehension. Ordinary care of a reasonably prudent man does not demand that a person should prevision or anticipate an unusual, improbable, or extraordinary occurrence, though such happening is within the range of possibilities."); *Little v. Miller*, 909 So.2d 1256, 1259 (Miss. App. 2005) (noting that it is plaintiff's burden to prove all four elements of a negligence claim by a preponderance of the evidence, and "[f]ailure to present sufficient proof as to any one of these elements requires that the entire claim be denied.").

Having reviewed the parties' briefs and exhibits, and viewing the facts in the light most favorable to plaintiff, the court is persuaded that Crowley is entitled to summary judgment because, as a matter of law, Crowley did not breach any duty it owed to plaintiff. Certainly Crowley owed a duty to the owners of real property in close proximity[1] to its port operations, to take reasonable measures to prevent its shipping containers from washing away in the event of a storm. However, the court holds as a matter of law that Crowley did not breach this duty because it did, as

---

[1] Plaintiff does not allege the distance between its buildings and the port. Nor is this information immediately apparent from the motion papers or the exhibits attached thereto. From Mapquest it appears that this distance may be approximately three-quarters of a mile. The parties have not briefed, and the court need not decide, the distance at which defendant's duty to protect its neighbors disappears altogether. For present purposes, the court shall assume that Crowley owed a general duty of care even to owners of property located three-quarters of a mile from the port.

4

a matter of uncontested[2] fact, take all measures as were prudent and reasonable under the circumstances in the short period of time between the issuance of the warning and the arrival of the hurricane. The court also holds, as a matter of law, that defendant had no duty to take additional measures, beyond those described below, because the enormously destructive force of Hurricane Katrina was unprecedented and defendant could not reasonably have foreseen that its containers might wash and blow away and cause damage to neighboring property unless additional, extraordinary measures were taken to secure or remove them.

Plaintiff does not challenge the propositions that "it was not until 4:00 p.m. on Friday, August 26, 2005, that the official National Hurricane Center ("NHC") forecast for the landfall of Hurricane Katrina changed to include the Mississippi Gulf Coast" and that Katrina made landfall the following Monday morning. Affidavit of Richard G. Henning ¶ 7 (defendant's Exhibit A). Nor does plaintiff dispute that defendant, according to its vice-president, took the following actions to secure its trailers and containers:

> 6. . . . Crowley first focused on contacting its customers and/or their trucking companies to request that they retrieve their cargo containers from Crowley's terminal at the Port prior to the landfall of Hurricane Katrina. Crowley also attempted to contact independent truck drivers to request the removal of cargo containers as well. Hold Orders issued by the U.S. Customs Service prevented the release of certain cargo and equipment from Crowley's terminal . . .
>
> 7. Following these efforts, Crowley engaged its stevedore company at the Port to block stow the containers, trailers and equipment on its terminal. . . . The block stows were completed by 1:00 p.m. on Sunday, August 28, 2005, approximately one hour after the mandatory evacuation of all persons south of Highway 90 was issued

---

[2]While plaintiff "contests" these facts with attorney argument, it does not do so with evidence as required by Fed. R. Civ. P. 56(e). Therefore, for purposes of deciding the instant motion the court deems these facts to be uncontested.

5

>by the Harrison County Civil Defense. This is the same procedure Crowley employed at the Port in preparation for all other hurricanes that have threatened landfall on the Mississippi Gulf Coast, regardless of the category of the storm, including Hurricanes Lili (2002), Ivan (2004), Charley (2004) and Dennis (2005).

Affidavit of Michael Hopkins (defendant's Exhibit D).

Nor does plaintiff directly challenge any of the following averments of Ronald L. Signorino, who is the former head of OSHA's Office of Maritime Standards:

>(a) Crowley acted in a reasonable manner in preparing for Katrina's landfall.

>(b) Crowley's response was timely, and well coordinated with its stevedore/marine terminal operator and with Mississippi State Port Authority personnel;

>(c) Such preparedness first centered upon Crowley's attempts to have consignees/cargo owners evacuate intermodal containers/trailers from the Port of Gulfport;

>(d) In the case of intermodal containers/trailers that were unable to be evacuated, containers at Gulfport were each mounted to intermodal chassis and commonly accepted and widely used block stowing [fn 1] principles in the industry were employed in order to better safeguard the cargo, the equipment and the environment;

>(e) Such block stowing requirements are found within several U.S. marine terminal hurricane preparedness/hurricane contingency plans, and block stowing requirements are similarly incorporated into hurricane contingency plans implemented by several relevant entities outside of the United States; and

>(f) Such block stowing methods are typically reliable and greatly minimize potential damage and loss.

---

[fn 1] "Block stowage, in particular, is best described as the arrangement of cargo in a given space and in such a manner so as to ensure its easy identification, segregation and subsequent handling. Block stowage tends to confine, into one discrete and tightly drawn

6

area, a homogenous grouping of similar cargo units. Consequently, block stowage typically offers the attributes of stability and strength in circumstances where such attributes are desired." *See* Ex. "1" at 6.

Affidavit of Ronald L. Signorino ¶ 6 (defendant's Exhibit F).

Plaintiff's only evidence, as opposed to attorney argument, in support of its response is the following:

- An affidavit of Lanny Ladner who avers that he "saw paper rolls and bundles of timber that came from the Port of Gulfport" following a 1947 hurricane and that he saw "paper rolls and other Port debris in West Gulfport and East Long Beach scattered on property north of Highway 90" following Hurricane Camille in 1969.

- An affidavit of Roberta Iversen who avers that she "saw large paper rolls in my yard" in West Gulfport following Hurricane Camille in 1969 and that these were "very similar to the ones I observed on my property after Hurricane Katrina."

- An affidavit of Terry Jones who avers that he "saw many giant rolls of paper on the Fountainhead [Motel] property and elsewhere surrounding the Fountainhead following Hurricane Camille in 1969" as well as "large sealed steel containers that looked like modern cargo containers such as those currently in use at the Port at Gulfport," one of which "smashed into the southeast corner of the Fountainhead Motel office." Jones also "saw much other debris from the Port of Gulfport. I also saw large barges and several ships that had been swept onto the beaches in West Gulfport."

- An affidavit of Dale Waltman, the operations manager of the port, who provides a timeline of the hurricane warnings he issued via email to Crowley and others beginning August 26, 2005.

- An executive order, dated August 26, 2005, issued by the governor of Mississippi, activating the Mississippi National Guard to assist with the response to Hurricane Katrina.

Neither these affidavits, nor the executive order, suffice to establish that defendant owed a duty to take additional measures beyond those described in the Hopkins affidavit because they do not demonstrate the existence of any reasonably foreseeable risk as regards the shipping containers. Plaintiff alleges that it was defendants' *shipping containers* which were not properly

7

secured (by removal from the port or otherwise). Any evidence regarding paper rolls and "other Port debris," as testified to by Ladner, Iversen and Jones, is therefore irrelevant. The only mention in plaintiff's evidence of a shipping container is the statement by Jones that he saw one that crashed into a motel restaurant during Hurricane Camille in 1969. Even assuming this container came from the port – and Jones does not aver that it did, but only that the container he saw looks like the ones now in use at the port – this single incident 36 years prior to Hurricane Katrina is not probative of foreseeability. In addition to the extreme length of time between the two storms, there is also the important fact, which plaintiff fails to address, that defendant *block stowed its containers* in preparation for Hurricane Katrina. Defendant has submitted affidavits to the effect that it had "never experienced the separation of a block stow beyond the perimeters of its marine terminal at the Port or any of its marine terminals around the world prior to Hurricane Katrina." Hopkins Aff. ¶ 8; Weist Aff. ¶ 8. In fact defendant's expert avers that before Hurricane Katrina "there was *no recorded incident* in the United States of a hurricane striking a marine terminal facility and separating a block stow beyond the perimeters of an affected facility or forcing containers/trailers beyond the perimeters of an affected facility." Signorino Aff. ¶ 7 (emphasis added). Plaintiff has no evidence that the single container seen by Jones had been block stowed.

The Waltman affidavit, and the governor's executive order, add nothing to the foreseeability issue. These documents simply show that Hurricane Katrina was recognized as a threat to the Mississippi Gulf Coast, and Mississippi generally, by August 26. Defendant does not deny this. As noted above, defendant immediately took steps to have its clients remove their containers and to have a stevedoring company block stow the rest. Plaintiff does not challenge the averment that defendant completed the block stowage by 1:00 p.m. on Sunday, August 28, 2005, the

day before Hurricane Katrina made landfall in Gulfport. *See* Stockman Aff. ¶ 7.

In an effort to defeat defendant's motion, plaintiff makes a number of assertions regarding the foreseeability of escaping containers and defendant's duty to take additional measures, but all of these assertions are unsupported. Plaintiff's counsel asserts that "[i]t is known to all that the Mississippi Sound is an extremely shallow body of water connected to the Gulf of Mexico"; that "the 'northeast quadrant' of the hurricane . . . is [the] area where winds and storm surge are most powerful, as is known to all"; that "there was nothing more predictable in the five days preceding Hurricane Katrina's landfall that containers, trailers, trucks, chassis, and other objects including paper rolls . . . will be swept out of the Port and into West Gulfport"; and that defendant "should have been able to execute a plan to move every container, chassis, or whatever floatable property out of the Port to a safe place. The objects need not have been take [sic] farther than Interstate 10." Plaintiff's Response, pp. 3-5. In responding to a motion for summary judgment, allegations and attorney argument do not suffice. Rather, plaintiff must produce specific, admissible facts.

In short, plaintiff has offered no evidence, by expert opinion or otherwise, on the issues of duty or breach. The existence of a duty is a question of law, not fact, and must therefore be decided by the court, not the jury. *See Rein*, 865 S.2d at 1143; *Foster by Foster v. Bass*, 575 So.2d 967, 972 (Miss. 1990). Breach and foreseeability are also issues of law, not fact, unless and until plaintiff presents "sufficient evidence" to create a factual dispute, *see Rein*, 865 So.2d at 1144, which plaintiff has not done in this case. Not only is plaintiff's evidence insufficient; plaintiff has failed to offer *any* probative evidence on the issues of duty, breach and foreseeability.

The court concludes, based on the uncontested affidavits noted above, that defendant took prompt, reasonable and adequate precautions prior to the arrival of Hurricane Katrina to remove

9

or secure its property. The affidavits establish that defendant, upon hearing the warning that the hurricane may be heading for the Mississippi Gulf Coast, took immediate action to have its consignees remove their containers and to block stow the remaining containers and trailers. The affidavits also establish that block stowage is "typically reliable, and greatly minimize[s] potential damage and loss" and that "[p]rior to Hurricane Katrina, there was no recorded incident in the United States of a hurricane striking a marine terminal facility and separating a block stow beyond the perimeters of an affected facility or forcing containers/trailers beyond the perimeters of an affected facility," Signorino Aff. ¶¶ 6(f), 7; and that Crowley "had never experienced the separation of a block stow beyond the perimeters of its marine terminal at the Port or any of its marine terminals around the world prior to Hurricane Katrina." Hopkins Aff. ¶ 8; Weist Aff. ¶ 8. Based on these uncontested averments, the court concludes that both the extraordinary force of this storm and its ability to transport containers away from the port and onto and into neighboring property was unforeseeable, as these were "unusual and improbable or extraordinary occurrence[s]," *Rein*, 865 So.2d at 1144; that defendant had no duty to take additional measures, beyond those described, to secure its property; and that defendant breached no duty to plaintiff. The court rejects plaintiff's view that defendant had a duty to "ensure" its containers would not wash away, as alleged in para. 22 of the amended complaint. Defendant is not an insurer, and its duty was only to take reasonable measures to prevent foreseeable harm from occurring to others.

The court concludes that plaintiff's negligence claim fails because plaintiff cannot prevail on two elements as to which it has the burden of proof, namely, duty and breach. Under these circumstances, the court need not address defendant's Act of God defense. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment [docket entry 39] is granted.

IT IS FURTHER ORDERED that defendant's motion to strike [docket entry 58] is denied.

Dated: June 25, 2007

\_\_s/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION